(Not for publication)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

_____
                                           :

D.A. and M.A. on their own behalf and     :
on behalf of K.A., a minor, as her legal   :
guardians,                                    :
                                             :
             Plaintiffs,             :      Civil No. 07-4341 (RBK)
                                             :
                 v.                        :      **OPINION**
                                             :
PLEASANTVILLE SCHOOL           :
DISTRICT, et al.,                   :
                                             :
             Defendants.           :
_____ :

**KUGLER**, United States District Judge:

This matter comes before the Court on a partial motion by Defendants New Jersey Department of Education, New Jersey State Board of Education, and Lucille E. Davey (collectively "State Defendants") to dismiss certain claims brought by Plaintiffs D.A. and M.A. on their own behalf and on behalf of minor K.A. as her legal guardians (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs allege State Defendants and others denied K.A. her right to a free and appropriate education in the least restrictive environment under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and discriminated against her based on her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., section 504 of the

1

Rehabilitation Act, 29 U.S.C. § 794, and the New Jersey Law Against Discrimination

("NJLAD"), N.J. Stat. Ann. 10:5-1 et seq.  For the reasons set forth below, the Court will grant

State Defendants' partial motion to dismiss.

## I.   BACKGROUND

K.A., a nine year old girl with Down Syndrome, resides in the Pleasantville School

District ("the District") with her grandparents D.A. and M.A.  (Compl. ¶ 6).  D.A. and M.A.

became K.A.'s legal guardians when she was two years old.  (Id. ¶ 7).  Since the time K.A.

started preschool in 2002, D.A. and M.A. have been extremely involved in her education.  Either

one or both of them have attended her individualized education program ("IEP") meetings since

the Pleasantville School District started providing special education services to K.A.  (Id.)  M.A.

also frequently visits K.A.'s school.  (Id. ¶ 43.)  In addition, D.A. and M.A. assert they frequently

attend the Pleasantville School District School Board meeting to keep apprized of the financial

and programmatic issues in the District.  (Id. ¶ 8.)

Nevertheless, K.A. has struggled in the Pleasantville Schools, where she has always been

assigned to a class consisting exclusively of children with disabilities.  (Id. ¶¶ 30, 40).  During

the 2004-2005 school year, the District's Child Study Team informed D.A. and M.A. that K.A.'s

inability to communicate with her classmates and teachers caused K.A. to hit, kick, and scratch

others to attract attention.  D.A. and M.A. attributed these behavioral problems to deficiencies in

K.A.'s IEP and the District's failure to train the teachers and staff to adequately address her

needs.  (Id. ¶ 37.)  That year, D.A. and M.A. expressed their dissatisfaction to the District;

however, they did not request a due process hearing.  (Id.)

During the following school year, the District attempted to improve K.A.'s situation by

transferring her to a different school within the District.  According to the District's Child Study

Team, however, K.A. made minimal academic progress that year.  (Id. ¶ 39.)  Most recently, the

District again transferred K.A. to a new school, South Main Street School.  (Id. ¶ 40.)  At South

Main Street School, Plaintiffs again reference the District's inadequate staff training, citing the

mere half day of staff education on handling students with behavioral problems.  (Id. ¶ 41.)  D.A.

and M.A. did not seek a due process hearing concerning K.A.'s IEP during either of those years,

however.

During K.A.'s IEP meeting in June 2006, the District recommended K.A. be transferred

from South Main Street School to the Atlantic County Special Services School ("ACSSS"), a

segregated educational institution for students with disabilities.  (Id. ¶¶ 47-48.)  D.A. and M.A.

objected because of their desire for K.A. to be enrolled in an academically focused program

rather than a life skills program, like that provided by ACSSS.  (Id. ¶¶ 47, 49.)  Other then

objecting to the recommendation, however, D.A. and M.A. took no further action regarding the

proposed transfer to ACSSS.

At K.A.'s February 12, 2007 IEP meeting, the District's Child Study Team again

recommended K.A. be transferred to ACSSS.  Once again, D.A. and M.A. objected.  This time,

however, they also requested a due process hearing pursuant to the IDEA, seeking relief from the

District's failure to provide K.A. with a free and appropriate education in the least restrictive

environment.  (Id. ¶ 51.)  D.A. and M.A. represented themselves and K.A. at the due process

hearing, which was held over three days on March 27, April 23, and May 17, 2007.  On June 12,

2007, the Administrative Law Judge issued an opinion upholding the District's recommendation

to transfer K.A. to ACSSS.

On September 10, 2007, Plaintiffs filed this action to appeal the outcome of the due process hearing.  Plaintiffs also assert K.A. was discriminated against in violation of the ADA, section 504 of the Rehabilitation Act, and the NJLAD.  In addition to relying on K.A.'s own experience in the Pleasantville School District, Plaintiffs also cite statistics to highlight what they believe is a failure by State Defendants to provide the support necessary for the District to offer K.A. a free and appropriate education in the least restrictive environment.  In response to an order to show cause filed by Plaintiffs, this Court granted a temporary restraining order on September 19, 2007 requiring K.A. be returned to the status of her June 7, 2006 IEP pending the outcome of this case.  On November 2, 2007, State Defendants filed the partial motion to dismiss now before the Court.  Plaintiffs oppose the motion.

## II.    STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or portions of a complaint may be dismissed for failure to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept as true all allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993); Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (citation omitted).

In addition, the Court may dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  District courts have original subject matter jurisdiction over (1) civil actions arising under the Constitution, laws or treaties of the United

4

States and (2) civil actions between diverse parties where the amount in controversy exceeds

$75,000 exclusive of interest and costs.  See 28 U.S.C. §§ 1331, 1332.  In considering a motion

to dismiss for lack of subject matter jurisdiction, "the person asserting jurisdiction bears the

burden of showing that the case is properly before the Court at all stages of the litigation."

Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).

## III.     DISCUSSION

### A.     Exhaustion of Administrative Remedies Under IDEA

Referencing K.A.'s entire six years in the Pleasantville School District, Plaintiffs seek

injunctive relief from State Defendants "to correct the systemic problems that are the

underpinnings of Pleasantville's failure to provide K.A. an appropriate education in the least

restrictive environment."  In addition, Plaintiffs ask State Defendants to provide direct services,

including technical assistance, personnel preparation, and professional development and training;

positive behavioral interventions; and supports for the use of technology, including technology

with universal design principles and assistive technology devices.  State Defendants in response

level a facial challenge to this Court's subject matter jurisdiction over Plaintiffs' claims relating

to school years prior to 2007-2008 based on Plaintiffs' failure to exhaust their administrative

remedies for those years.  State Defendants argue Plaintiffs cannot meet any exception to the

IDEA exhaustion requirement.  Plaintiffs counter that they should be excused from having to

exhaust because the administrative agency is not empowered to grant the relief they seek from

State Defendants.

The IDEA obliges states in receipt of federal funding under the statute to guarantee a free

and appropriate education to all children with disabilities.  20 U.S.C. § 1412(a)(1)(A).  The

IDEA instructs states to develop a detailed instructional plan, known as an IEP, for every disabled child.  § 1412(a)(4).  The IEP is specially designed for each child, consisting of "a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services."  Holmes v. Millcreek Twp. Sch. Dist., 205 F.3d 583, 589-90 (3d Cir. 2000) (citing 20 U.S.C. § 1401(a)(20)).  The IDEA further requires that students who fall under its provisions are to be educated in the "least restrictive environment."  20 U.S.C. § 1412(a)(5)(A).  Where possible, this requirement leads to "mainstreaming" disabled students by educating them side by side nondisabled students.

Guardians who wish to dispute an IEP's recommendations must ordinarily exhaust their administrative remedies using the process delineated by the IDEA.  Guardians can first elect to resolve the dispute through mediation with the local school district.  § 1415(e)(2).  The mediation process is not required, however, and a guardian may choose to bypass it altogether and instead request an "impartial due process hearing."  § 1415(b), (f).  Due process hearings are conducted by either state or local educational agencies, depending on the procedure outlined by the particular state.  § 1415(f)(1).  In New Jersey, due process hearings are conducted by administrative law judges.  N.J. Admin. Code § 6A:14-2.7(a).  Once a decision has been rendered at a due process hearing, administrative remedies are deemed exhausted, and a party has the right to appeal the due process hearing decision by bringing a civil action in any state or federal court.  § 1415(I)(1)(A)-(2)(A).  Under the IDEA, exhaustion is jurisdictional in nature. W.B. v. Matula, 67 F.3d 484, 493 (3d Cir. 1995), abrogated on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007).  The Third Circuit has reasoned that failing to

exhaust all administrative remedies would not only discredit the detailed procedures outlined in the statute but also would be contrary to Congress' intent that the needs of children are best met by having the parents and local education agency work together.  Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994) (citing Smith v. Robinson, 468 U.S. 992, 1011-12 (1980)).

Nevertheless, the Third Circuit has recognized four exceptions to the IDEA's exhaustion requirement.  A plaintiff may bypass the administrative process where (1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant the relief sought; or (4) when exhaustion would cause severe or irreparable harm to a party.  Id. at 778 (citations omitted).  Arising out of the first and third of these exceptions, courts have enunciated that plaintiffs may "be excused from the pursuit of administrative remedies where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process."  Beth V. by Yvonne V. v. Carroll, 87 F.3d 80, 89 (3d Cir. 1996); see also Grieco v. N.J. Dep't of Educ., Civ. A. No. 06-4077, 2007 WL 1876498, at *6 (D.N.J. June 27, 2007) (stating "a claim is 'systemic' if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act" (quoting Doe v. Arizona Dep't of Educ., 111 F.3d 678, 681 (9th Cir. 1997))).  Such allegations of "systemic" relief stand in contrast to claims for so-called "substantive" relief, involving "limited components of a program," which the administrative process is capable of correcting.  Grieco, 2007 WL 1876498, at *6 (quoting Doe, 111 F.3d at 681).

The relief Plaintiffs seek is substantive in nature and thus needs to be exhausted.  The fundamental issue Plaintiffs raise is whether K.A. was provided with a free and appropriate education in the least restrictive environment during each of the six years she has attended Pleasantville Schools.  The secondary issue is whether State Defendants are liable for any failure in that regard due to inadequate supervision of IDEA compliance.  These questions do not implicate the integrity or reliability of New Jersey's IDEA dispute resolution process.  Rather, they are precisely the kinds of issues the IDEA mandates adjudication of in the first instance at a due process hearing.  See id. (stating a "factually intensive inquiry into the circumstances of each individual child's case . . . [is] best resolved with the benefit of agency expertise and a fully developed administrative record" (quoting Assoc. for Cmty. Living in Colo. v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993))).  Plaintiffs' argument for a futility exception is not persuasive because they could have named State Defendants as parties in a due process hearing, see L.P. v. Edison Bd. of Educ., 626 A.2d 473, 479 (N.J. Super. Ct. Law Div. 1993) (noting obligation of Department of Education to ensure free and appropriate public education by handling petitions for due process review of local school board decisions), and there is nothing in the administrative code or the IDEA that would prevent an administrative law judge from implementing the relief they seek.  See id.; Grieco, 2007 WL 1876498, at *7.

This Court lacks subject matter jurisdiction to entertain claims relating to any school year prior to 2007-2008.  As Plaintiffs acknowledge, they did not exhaust their administrative remedies for those years, and since the futility exception does not apply, State Defendants' motion to dismiss those IDEA claims will be granted.  Furthermore, since "parents alleging violations of section 504 [of the Rehabilitation Act] and 42 U.S.C. § 1983 are required to

exhaust administrative remedies before commencing separate actions in court where exhaustion

would be required under [IDEA]," Jeremy H. by Hunter v. Mount Lebanon Sch. Dist., 95 F.3d

272, 281 (3d Cir. 1996), Plaintiffs' pre-2007-2008 claims under those statutes will also be

dismissed for lack of subject matter jurisdiction.

### B.      Standing for D.A. and M.A. on Non-IDEA Claims

K.A.'s guardians D.A. and M.A. assert claims on their own behalf under the ADA,

section 504 of the Rehabilitation Act, and NJLAD.  State Defendants argue D.A. and M.A. lack

standing to bring these claims because they do not allege State Defendants discriminated against

them either for their association with K.A., a disabled person, or for any other reason.  In

response, Plaintiffs argue the Supreme Court's decision in the matter of Winkelman ex rel.

Winkelman v. Parma City School District, 127 S.Ct. 1994 (2007), recognizing parents' standing

to bring an IDEA claim based on coterminous rights with their child, extends parents standing

under the ADA, Rehabilitation Act, and NJLAD, since violations of IDEA are "essentially

violations of the [Rehabilitation Act]."

Standing "is a threshold jurisdictional requirement, derived from the 'case or

controversy' language of Article III of the Constitution."  Pub. Interest Research Group of N.J.,

Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997).  The party invoking federal

jurisdiction bears the burden of establishing standing in the same way as any other matter on

which the plaintiff bears the burden of proof, i.e., "with the manner and degree of evidence

required at the successive stages of the litigation."  Lujan v. Defenders of Wildlife, 504 U.S.

555, 561 (1992).  Because the Court presently decides a motion to dismiss, Plaintiffs must

establish standing by alleging sufficient facts in their complaint.

The Third Circuit has articulated three requirements for Article III constitutional standing: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 484-85 (3d Cir. 1998) (citing Lujan, 504 U.S. at 560-61).  "In addition to constitutional standing limitations, the Supreme Court has identified several prudential limitations, including the requirement that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 405 (3d Cir. 2005).

Both the ADA and the Rehabilitation Act, however, create a right of action for persons or entities whose claims might otherwise be barred by prudential considerations.  Specifically, the ADA affords "any person alleging discrimination on the basis of disability" the right to relief, 42 U.S.C. § 12133, and the RA permits "any person aggrieved" by unlawful discrimination to bring suit.  29 U.S.C. § 794a(a)(2).  The ADA also makes it unlawful to "exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual . . . because of the known disability of an individual with whom the individual . . . is known to have a relationship or association."  42 U.S.C. § 12182(b)(1)(E).

10

Here, as individuals with a relationship to a person with a known disability, D.A. and K.A. could have a cause of action under the ADA and the Rehabilitation Act; however, their present claim fails to allege any facts to support such a claim.  Their claims rest exclusively on the discrimination they allege K.A. experienced, and they do not claim they themselves faced any discrimination.  Consequently, the Court next addresses whether the ADA and Rehabilitation Act extend D.A. and M.A. their own right to sue based on discrimination against K.A.  In Winkelman the Court held that under the IDEA parents can assert their own claims regarding the provision of a free and appropriate public education for their child when appealing a due process hearing determination.  127 S.Ct. at 2004.  In so holding, the Court reversed the Circuit Court's dismissal of the appeal on the ground that the parents, who were proceeding pro se, could not prosecute their child's IDEA claim.  The Court based its decision on the text and structure of the IDEA, which the Court characterized as providing for "expansive review and extensive parental involvement."  Id. at 2002.  The Court found by the express terms of the IDEA, it "contemplates parents will be the parties bringing the administrative complaints" and "it would be inconsistent with the statutory scheme to bar them from continuing to assert these [enforceable] rights in federal court."  Id.

Since Winkelman, courts have disagreed as to whether its reasoning applies beyond the IDEA to the ADA and Rehabilitation Act.  Some courts have extended Winkelman with little explanation.  See, e.g., Blanchard v. Morton Sch. Dist., 509 F.3d 934, 938 (9th Cir. 2007) (citing Supreme Court's pronouncement in Winkelman that "'a parent of a child with a disability has a particular and personal interest' in preventing discrimination against the child"); Tereance D. ex rel. Wanda D. v. Sch. Dist. of Phila., 548 F. Supp. 2d 162, --- (E.D. Pa. 2008)

(denying motion to dismiss parent's ADA and Rehabilitation Act claims because "[u]nder IDEA, a parent may be an aggrieved party with standing to assert both substantive and procedural rights").  In C.J.G. v. Scranton School District, No. 3:07-CV-1314, 2007 WL 4269816 (M.D. Pa. Dec. 3, 2007), however, the court analyzed its extension of Winkelman in detail.  There, the court focused on Winkelman's determination that a parent qualifies as "any party aggrieved" under the IDEA.  Id. at *5 (citing 29 U.S.C. § 1415(i)(2)(A) ("Any party aggrieved by the findings and decision made [at the administrative level] shall have the right to bring a civil action with respect to the complaint.")).  The court noted the similar language used in both the Rehabilitation Act (permitting recovery for "a party aggrieved") and ADA (creating cause of action for "person[s] aggrieved") and found that "any party aggrieved" should be construed to the fullest extent permitted.  Id. (citing Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 208 (1972)).

    This Court respectfully disagrees with the extension of Winkelman into the context of the ADA and Rehabilitation Act.  The Court in Winkelman states, "the text of IDEA resolves the question presented.  We recognize, in addition, that a proper interpretation of the Act requires a consideration of the entire statutory scheme."  127 S. Ct. at 2000.  Thus, the Court did not base its decision on the IDEA's "aggrieved party" language, but rather, its holding arose from an examination of the overall structure and content of the IDEA.[1]  The Court found parents' IDEA rights coterminous with those of their children because its provisions reflect

---

    [1]  The Supreme Court has recognized it is appropriate to look to statutory language and "textual evidence of a statutory scheme" to interpret the breadth of standing conferred by Congress in a particular statute.  Bennett v. Spear, 520 U.S. 154, 166 (1997) (citing Trafficante, 409 U.S. at 210-11).

parental involvement at all phases of crafting an IEP, the IDEA expressly provides parents will be parties at the administrative level, and there is no implication parents should not continue as parties in a civil action appealing the administrative determination.  Id. at 2002.  This Court interprets Winkelman as too closely tied to the specific language and structure of the IDEA to apply equally to the ADA or Rehabilitation Act, even though those laws afford similar protections.  As reasoned by another District Court, "[o]nly where the rights of the child and parents are coterminous can the parents pursue, on their own behalf, the claims they share with their child."  J.R. ex rel. W.R. v. Sylvan Union Sch. Dist., No. CIV S-06-2136, 2008 WL 682595, at *1 (E.D. Cal. March 10, 2008) (declining to extend Winkelman and dismissing all non-IDEA claims of parents based on lack of standing).

As a result, D.A. and M.A. do not have standing to pursue their own claims against State Defendants arising out of the alleged discrimination against K.A.  Since the ADA and NJLAD are governed by the same standards, see Lawrence v. Nat'l Westminster Bank, 98 F.3d 61, 70 (3d Cir. 1996), D.A. and M.A. also lack standing to bring claims under that statute.  Thus, D.A. and M.A.'s claims under the ADA, Rehabilitation Act, and NJLAD will also be dismissed.

## IV.   CONCLUSION

Based on the foregoing reasoning, the Court will grant State Defendants' motion.  An accompanying order shall issue today.


Dated: 6-30-08                                                     s/ Robert B. Kugler
                                                                  ROBERT B. KUGLER
                                                                  United States District Judge