(Not for publication)                                    (Docket No. 38, 39)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                                    :
D.A. and M.A. on their own behalf and               :
on behalf of K.A., a minor, as her legal            :
guardians,                                           :
                                                    :
                    Plaintiffs,                     :        Civil No. 07-4341 (RBK/JS)
                                                    :
          v.                                        :        **OPINION**
                                                    :
PLEASANTVILLE SCHOOL                                 :
DISTRICT, et al.,                                    :
                                                    :
                    Defendants.                     :
_____             :

**KUGLER**, United States District Judge:

          This matter comes before the Court on a motion filed by Defendants Pleasantville School

District, Clarence Alston, James Pressley, Julio Sanchez, Jr., Joanne Famularo, Doris Graves,

Melanie Griffin, Harriet Jackson, Jerome Page, David Thomas, and Rafael Velez (collectively,

"the District Defendants")[1] to dismiss certain claims brought by Plaintiffs D.A. and M.A. on their

own behalf and on behalf of minor K.A. as her legal guardians (collectively, "Plaintiffs")

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiffs allege that the

District Defendants and others denied K.A. her right to a free and appropriate education in the

_____

          [1] The instant motion was filed by counsel for the District Defendants; however, counsel
filed on behalf of, variously, "Defendants, Pleasantville Board of Education" or "Pleasantville
Board of Education."  The Court notes that the Pleasantville Board of Education is not itself a
party to this action, although the Pleasantville School District and the individual members of the
Pleasantville Board of Education are Defendants.  The Court understands the motion to have
been filed by the District Defendants, as opposed to a party not named in this lawsuit.

least restrictive environment under the Individuals with Disabilities Education Act ("IDEA"), 20

U.S.C. § 1400 et seq., and discriminated against her based on her disability in violation of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., section 504 of the

Rehabilitation Act, 29 U.S.C. § 794, and the New Jersey Law Against Discrimination

("NJLAD"), N.J. Stat. Ann. 10:5-1 et seq.  For the reasons set forth below, the Court will grant in

part and deny in part the District Defendants' partial motion to dismiss.

## I.      BACKGROUND

K.A., a nine year old girl with Down Syndrome, resides in the Pleasantville School

District ("the District") with her grandparents D.A. and M.A.  (Compl. ¶ 6).  D.A. and M.A.

became K.A.'s legal guardians when she was two years old.  (Id. ¶ 7).  Since the time K.A.

started preschool in 2002, D.A. and M.A. have been extremely involved in her education.  Either

one or both of them have attended her individualized education program ("IEP") meetings since

the Pleasantville School District started providing special education services to K.A.  (Id.)  M.A.

also frequently visits K.A.'s school.  (Id. ¶ 43.)  In addition, D.A. and M.A. assert they frequently

attend the Pleasantville School District School Board meetings to keep apprized of the financial

and programmatic issues in the District.  (Id. ¶ 8.)

Nevertheless, K.A. has struggled in the Pleasantville Schools, where she has always been

assigned to a class consisting exclusively of children with disabilities.  (Id. ¶¶ 30, 40).  During

the 2004-2005 school year, the District's Child Study Team informed D.A. and M.A. that K.A.'s

inability to communicate with her classmates and teachers caused K.A. to hit, kick, and scratch

others to attract attention.  D.A. and M.A. attributed these behavioral problems to deficiencies in

K.A.'s IEP and the District's failure to train the teachers and staff to adequately address her

needs.  (Id. ¶ 37.)  That year, D.A. and M.A. expressed their dissatisfaction to the District; however, they did not request a due process hearing.  (Id.)

During the following school year, the District attempted to improve K.A.'s situation by transferring her to a different school within the District.  According to the District's Child Study Team, however, K.A. made minimal academic progress that year.  (Id. ¶ 39.)  Most recently, the District again transferred K.A. to a new school, South Main Street School.  (Id. ¶ 40).  At South Main Street School, Plaintiffs again reference the District's inadequate staff training, citing the mere half day of staff education on handling students with behavioral problems.  (Id. ¶ 41.)  D.A. and M.A. did not seek a due process hearing concerning K.A.'s IEP during either of those years, however.

During K.A.'s IEP meeting in June 2006, the District recommended K.A. be transferred from South Main Street School to the Atlantic County Special Services School ("ACSSS"), a segregated educational institution for students with disabilities.  (Id. ¶¶ 47-48.)  D.A. and M.A. objected because of their desire for K.A. to be enrolled in an academically focused program rather than a life skills program, like that provided by ACSSS.  (Id. ¶¶ 47, 49.)  Other then objecting to the recommendation, however, D.A. and M.A. took no further action regarding the proposed transfer to ACSSS.

At K.A.'s February 12, 2007 IEP meeting, the District's Child Study Team again recommended K.A. be transferred to ACSSS.  Once again, D.A. and M.A. objected.  This time, however, they also requested a due process hearing pursuant to the IDEA, seeking relief from the District's failure to provide K.A. with a free and appropriate education in the least restrictive environment.  (Id. ¶ 51.)  D.A. and M.A. represented themselves and K.A. at the due process

hearing, which was held over three days on March 27, April 23, and May 17, 2007.  On June 12, 2007, the Administrative Law Judge issued an opinion upholding the District's recommendation to transfer K.A. to ACSSS.

 On September 10, 2007, Plaintiffs filed this action to appeal the outcome of the due process hearing.  Plaintiffs also assert K.A. was discriminated against in violation of the ADA, section 504 of the Rehabilitation Act, and the NJLAD.  In response to an order to show cause filed by Plaintiffs, this Court granted a temporary restraining order on September 19, 2007 requiring K.A. be returned to the status of her June 7, 2006 IEP pending the outcome of this case.

In an Opinion and Order dated June 30, 2008, this Court granted a partial motion to dismiss filed by Defendants New Jersey Department of Education, New Jersey State Board of Education, and Lucille E. Davey (collectively, "the State Defendants").  The Court held that it lacked subject matter jurisdiction to entertain claims under IDEA, section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983  relating to any school year prior to 2007-2008 because Plaintiffs failed to exhaust their administrative remedies for those years.  Also, the Court dismissed D.A. and M.A.'s claims under the ADA, Rehabilitation Act, and NJLAD for their lack of standing to bring those claims.

On September 18, 2009, the District Defendants filed the partial motion to dismiss now before the Court.  The instant motion is largely based upon the same arguments advanced by the State Defendants in their motion, although it additionally moves to dismiss any of Plaintiffs' claims relating to any school year after 2007-2008 because of Plaintiffs' alleged failure to exhaust administrative remedies as to those claims.  Plaintiffs have not opposed the motion.

## II.    STANDARD

4

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or portions of a complaint may be dismissed for failure to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept as true all allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993); Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (citation omitted).

In addition, the Court may dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  District courts have original subject matter jurisdiction over (1) civil actions arising under the Constitution, laws or treaties of the United States and (2) civil actions between diverse parties where the amount in controversy exceeds $75,000 exclusive of interest and costs.  See 28 U.S.C. §§ 1331, 1332.  In considering a motion to dismiss for lack of subject matter jurisdiction, "the person asserting jurisdiction bears the burden of showing that the case is properly before the Court at all stages of the litigation."  Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).

Where a party submits a motion to dismiss that relies upon matters outside the pleadings, the Court may treat that motion as one for summary judgment as long as both parties (1) have notice that the motion could be treated as one for summary judgment, and (2) have been given a reasonable opportunity to present relevant materials.  Fed. R. Civ. P. 12(c); see Carver v. Plyer, 115 Fed. App'x. 532, 536-37 (3d Cir. 2004); Anjelino v. New York Times Co., 200 F.3d 73, 88 (3d Cir. 2000).

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Because the District Defendants' motion is unopposed, this Court will "treat all facts properly supported by the movant to be uncontroverted." Brandon v. Warden, No. State Prison, 2006 WL 1128721, *3 (D.N.J. Apr.27, 2006) (citations omitted). The Court will not grant

6

summary judgment on the basis of Plaintiffs' silence alone but will instead determine whether summary judgment is appropriate.  Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).  Because the District Defendants do not bear the ultimate burden of proof, the Court "must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law."  Id.

III.   DISCUSSION

A.   Exhaustion of Administrative Remedies

The District Defendants move for dismissal of Plaintiffs' IDEA claims based upon any time prior to the 2007-2008 school year, based on Plaintiffs' failure to exhaust their administrative remedies for those years.  The District Defendants argue that the Court's rationale in its June 30, 2008 Opinion and Order is properly applied to pre-2007-2008 claims against the District Defendants.

The IDEA obliges states in receipt of federal funding under the statute to guarantee a free and appropriate education to all children with disabilities.  20 U.S.C. § 1412(a)(1)(A).  The IDEA instructs states, and by extension local school districts, to develop a detailed instructional plan, known as an IEP, for every disabled child.  § 1412(a)(4).  The IEP is specially designed for each child, consisting of "a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services."  Holmes v. Millcreek Twp. Sch. Dist., 205 F.3d 583, 589-90 (3d Cir. 2000) (citing 20 U.S.C. § 1401(a)(20)).  The IDEA further requires that students who fall under its provisions are to be educated in the "least restrictive environment."  20 U.S.C. § 1412(a)(5)(A).  Where possible, this requirement leads to "mainstreaming" disabled students

7

by educating them side by side with nondisabled students.

Guardians who wish to dispute an IEP's recommendations must ordinarily exhaust their administrative remedies using the process delineated by the IDEA.  Guardians can first elect to resolve the dispute through mediation with the local school district.  § 1415(e)(2).  The mediation process is not required, however, and a guardian may choose to bypass it altogether and instead request an "impartial due process hearing."  § 1415(b), (f).  Due process hearings are conducted by either state or local educational agencies, depending on the procedure outlined by the particular state.  § 1415(f)(1).  In New Jersey, due process hearings are conducted by administrative law judges.  N.J. Admin. Code § 6A:14-2.7(a).  Once a decision has been rendered at a due process hearing, administrative remedies are deemed exhausted, and a party has the right to appeal the due process hearing decision by bringing a civil action in any state or federal court.  § 1415(I)(1)(A)-(2)(A).  Under the IDEA, exhaustion is jurisdictional in nature. W.B. v. Matula, 67 F.3d 484, 493 (3d Cir. 1995), abrogated on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007).  The Third Circuit has reasoned that failing to exhaust all administrative remedies would not only discredit the detailed procedures outlined in the statute but also would be contrary to Congress' intent that the needs of children are best met by having the parents and local education agency work together.  Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994) (citing Smith v. Robinson, 468 U.S. 992, 1011-12 (1980)).

Nevertheless, the Third Circuit has recognized four exceptions to the IDEA's exhaustion requirement.  A plaintiff may bypass the administrative process where (1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative

agency cannot grant the relief sought; or (4) when exhaustion would cause severe or irreparable harm to a party.  Id. at 778 (citations omitted).  Arising out of the first and third of these exceptions, courts have enunciated that plaintiffs may "be excused from the pursuit of administrative remedies where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process." Beth V. by Yvonne V. v. Carroll, 87 F.3d 80, 89 (3d Cir. 1996); see also Grieco v. N.J. Dep't of Educ., Civ. A. No. 06-4077, 2007 WL 1876498, at *6 (D.N.J. June 27, 2007) (stating "a claim is 'systemic' if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act" (quoting Doe v. Arizona Dep't of Educ., 111 F.3d 678, 681 (9th Cir. 1997))).  Such allegations of "systemic" relief stand in contrast to claims for so-called "substantive" relief, involving "limited components of a program," which the administrative process is capable of correcting.  Grieco, 2007 WL 1876498, at *6 (quoting Doe, 111 F.3d at 681).

        The relief Plaintiffs seek is substantive in nature and thus needs to be exhausted.  The fundamental issue Plaintiffs raise is whether K.A. was provided with a free and appropriate education in the least restrictive environment during each of the six years she has attended Pleasantville Schools.  The secondary issue is whether the District Defendants are liable for any failure in that regard due to inadequate execution of IDEA compliance.  These questions do not implicate the integrity or reliability of New Jersey's IDEA dispute resolution process.  Rather, they are precisely the kinds of issues the IDEA mandates adjudication of in the first instance at a due process hearing.  See id. (stating a "factually intensive inquiry into the circumstances of

each individual child's case . . . [is] best resolved with the benefit of agency expertise and a fully developed administrative record" (quoting <u>Assoc. for Cmty. Living in Colo. v. Romer</u>, 992 F.2d 1040, 1044 (10th Cir. 1993))).

Here, though styled as a motion to dismiss, the District Defendants' motion includes as exhibits this Court's prior Opinion (Docket No. 33) and the Decision of the Administrative Law Judge.  Plaintiffs received the instant motion and therefore had notice that the Court might consider these exhibits on this issue.  Conversion to summary judgment is therefore permissible.

The Court does not have subject matter jurisdiction over claims arising from school years prior to 2007-2008 and will grant the District Defendants' motion as to those claims.  In support of its motion, the District Defendants point to the Decision of the Administrative Law Judge and this Court's prior Opinion to show that Plaintiffs did not exhaust their administrative remedies for the school years prior to 2007-2008.  The Court notes that Plaintiffs previously have acknowledged that they did not exhaust their administrative remedies for those years prior to the 2007-2008 school year, so the District Defendants' motion to dismiss those IDEA claims will be granted as this Court lacks subject matter jurisdiction over those of Plaintiffs' claims.  Since "parents alleging violations of section 504 [of the Rehabilitation Act] and 42 U.S.C. § 1983 are required to exhaust administrative remedies before commencing separate actions in court where exhaustion would be required under [IDEA]," <u>Jeremy H. by Hunter v. Mount Lebanon Sch. Dist.</u>, 95 F.3d 272, 281 (3d Cir. 1996), Plaintiffs' pre-2007-2008 claims under those statutes will also be dismissed for lack of subject matter jurisdiction.

The Court is mindful that since its Opinion and Order of June 30, 2008 it is conceivable that Plaintiffs have complied with the exhaustion requirement.  However, because Plaintiffs

have not opposed the instant motion, and thus failed to meet their burden to show that indeed they have exhausted their administrative remedies as to any pre-2007-2008 school years, the Court is left to infer that Plaintiffs have still failed to exhaust.

The District Defendants also argue that Plaintiffs have failed to exhaust their administrative remedies for the school years after 2007-2008.  Plaintiffs filed their Complaint in this Court on September 10, 2007.  "Allegations of possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be 'certainly impending' to constitute injury in fact."  Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (citing Babbitt v. Farm Workers, 442 U.S. 289, 298 (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923))).  Insofar as Plaintiffs aimed to make allegations based upon a future injury, such allegations do not satisfy the case or controversy requirement of Article III of the Constitution.  Moreover, the Court is not convinced that any such allegations are included in the Complaint.  Accordingly, the District Defendants' motion to dismiss any such claims for failure to exhaust administrative remedies will be denied.

**B.     Standing for D.A. and M.A. on Non-IDEA Claims**

K.A.'s guardians D.A. and M.A. assert claims on their own behalf under the ADA, section 504 of the Rehabilitation Act, and NJLAD.  The District Defendants argue, as did the State Defendants before them, that D.A. and M.A. lack standing to bring these claims because they do not allege the District Defendants discriminated against them either for their association with K.A., a disabled person, or for any other reason.

As the Court noted, with regard to the State Defendants' motion, the Supreme Court's decision in the matter of Winkelman ex rel. Winkelman v. Parma City School District,127 S.Ct.

11

1994 (2007) is relevant to the determination of this issue, not yet addressed in a precedential opinion by the Third Circuit Court of Appeals.

Standing "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." <u>Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.</u>, 123 F.3d 111, 117 (3d Cir. 1997). The party invoking federal jurisdiction bears the burden of establishing standing in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., "with the manner and degree of evidence required at the successive stages of the litigation." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992). Because the Court presently decides a motion to dismiss, Plaintiffs must establish standing by alleging sufficient facts in their complaint.

The Third Circuit has articulated three requirements for Article III constitutional standing: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.</u>, 140 F.3d 478, 484-85 (3d Cir. 1998) (citing <u>Lujan</u>, 504 U.S. at 560-61). "In addition to constitutional standing limitations, the Supreme Court has identified several prudential limitations, including the requirement that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" <u>Addiction Specialists,</u>

Inc. v. Twp. of Hampton, 411 F.3d 399, 405 (3d Cir. 2005).

Both the ADA and the Rehabilitation Act, however, create a right of action for persons or entities whose claims might otherwise be barred by prudential considerations. Specifically, the ADA affords "any person alleging discrimination on the basis of disability" the right to relief, 42 U.S.C. § 12133, and the RA permits "any person aggrieved" by unlawful discrimination to bring suit. 29 U.S.C. § 794a(a)(2). The ADA also makes it unlawful to "exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual . . . because of the known disability of an individual with whom the individual . . . is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

Here, as individuals with a relationship to a person with a known disability, D.A. and K.A. could have a cause of action under the ADA and the Rehabilitation Act; however, their present claim fails to allege any facts to support such a claim. Their claims rest exclusively on the discrimination they allege K.A. experienced, and they do not claim they themselves faced any discrimination. Consequently, the Court next addresses whether the ADA and Rehabilitation Act extend D.A. and M.A. their own right to sue based on discrimination against K.A. In Winkelman the Court held that under the IDEA parents can assert their own claims regarding the provision of a free and appropriate public education for their child when appealing a due process hearing determination. 127 S.Ct. at 2004. In so holding, the Court reversed the Circuit Court's dismissal of the appeal on the ground that the parents, who were proceeding pro se, could not prosecute their child's IDEA claim. The Court based its decision on the text and structure of the IDEA, which the Court characterized as providing for "expansive review and

extensive parental involvement." Id. at 2002.  The Court found by the express terms of the

IDEA, it "contemplates parents will be the parties bringing the administrative complaints" and

"it would be inconsistent with the statutory scheme to bar them from continuing to assert these

[enforceable] rights in federal court."  Id.

       Since Winkelman, courts have disagreed as to whether its reasoning applies beyond the

IDEA to the ADA and Rehabilitation Act.  Some courts have extended Winkelman with little

explanation.  See, e.g., Blanchard v. Morton Sch. Dist., 509 F.3d 934, 938 (9th Cir. 2007)

(citing Supreme Court's pronouncement in Winkelman that "'a parent of a child with a

disability has a particular and personal interest' in preventing discrimination against the child");

Tereance D. ex rel. Wanda D. v. Sch. Dist. of Phila., 548 F. Supp. 2d 162, 170 (E.D. Pa. 2008)

(denying motion to dismiss parent's ADA and Rehabilitation Act claims because "[u]nder

IDEA, a parent may be an aggrieved party with standing to assert both substantive and

procedural rights").  In C.J.G. v. Scranton School District, No. 3:07-CV-1314, 2007 WL

4269816 (M.D. Pa. Dec. 3, 2007), however, the court analyzed its extension of Winkelman in

detail.  There, the court focused on Winkelman's determination that a parent qualifies as "any

party aggrieved" under the IDEA.  Id. at *5 (citing 29 U.S.C. § 1415(i)(2)(A) ("Any party

aggrieved by the findings and decision made [at the administrative level] shall have the right to

bring a civil action with respect to the complaint.")).  The court noted the similar language used

in both the Rehabilitation Act (permitting recovery for "a party aggrieved") and ADA (creating

cause of action for "person[s] aggrieved") and found that "any party aggrieved" should be

construed to the fullest extent permitted.  Id. (citing Trafficante v. Metro. Life Ins. Co., 409 U.S.

205, 208 (1972)).

This Court respectfully disagrees with the extension of <u>Winkelman</u> into the context of the ADA and Rehabilitation Act.  The Court in <u>Winkelman</u> states, "the text of IDEA resolves the question presented.  We recognize, in addition, that a proper interpretation of the Act requires a consideration of the entire statutory scheme."  127 S. Ct. at 2000.  Thus, the Court did not base its decision on the IDEA's "aggrieved party" language, but rather, its holding arose from an examination of the overall structure and content of the IDEA.[2]  The Court found parents' IDEA rights coterminous with those of their children because its provisions reflect parental involvement at all phases of crafting an IEP, the IDEA expressly provides parents will be parties at the administrative level, and there is no implication parents should not continue as parties in a civil action appealing the administrative determination.  <u>Id.</u> at 2002.  This Court interprets <u>Winkelman</u> as too closely tied to the specific language and structure of the IDEA to apply equally to the ADA or Rehabilitation Act, even though those laws afford similar protections.  As reasoned by one District Court, "[o]nly where the rights of the child and parents are coterminous can the parents pursue, on their own behalf, the claims they share with their child."  <u>J.R. ex rel. W.R. v. Sylvan Union Sch. Dist.</u>, No. CIV S-06-2136, 2008 WL 682595, at *1 (E.D. Cal. March 10, 2008) (declining to extend <u>Winkelman</u> and dismissing all non-IDEA claims of parents based on lack of standing).  Additionally, another court in this District read <u>Winkelman</u> as this Court has and recently was affirmed by the Third Circuit in an unpublished Opinion.  <u>Woodruff v. Hamilton Township Public Schools</u>, No. 06-CV-3815(NLH), 2007 WL

---

[2]  The Supreme Court has recognized it is appropriate to look to statutory language and "textual evidence of a statutory scheme" to interpret the breadth of standing conferred by Congress in a particular statute.  <u>Bennett v. Spear</u>, 520 U.S. 154, 166 (1997) (citing <u>Trafficante</u>, 409 U.S. at 210-11).

4556968 (D.N.J. Dec. 20, 2007), aff'd, No. 08-2439, 2009 WL 105750, at *2 (3d Cir. Jan 15,

2009) ("Winkelman is limited to the IDEA context and does not permit [the parents of a minor

child] to litigate the NJLAD, procedural due process, or common law counts alleged in their

Amended Complaint.")

As a result, D.A. and M.A. do not have standing to pursue their own claims against the

District Defendants arising out of the alleged discrimination against K.A.  Since the ADA and

NJLAD are governed by the same standards, see Lawrence v. Nat'l Westminster Bank, 98 F.3d

61, 70 (3d Cir. 1996), D.A. and M.A. also lack standing to bring claims under the NJLAD.

Thus, D.A. and M.A.'s claims under the ADA, Rehabilitation Act, and NJLAD will also be

dismissed.

## IV.    CONCLUSION

Based on the foregoing reasoning, the Court will GRANT in part the District

Defendants' motion, dismissing Plaintiffs' pre-2007-2008 claims against the District Defendants

as well as D.A. and M.A.'s claims against the District Defendants under the ADA,

Rehabilitation Act, and NJLAD.  The Court will DENY, however, the District Defendants'

motion regarding any post-2007-2008 claims.  An accompanying order shall issue today.


Dated:        4-6-09                                          s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge